## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

RYAN MICHAEL GONGLIEWSKI,

              Plaintiff

       v.

SGT. WILDENSTEIN, *et al.*

              Defendants.

CIVIL ACTION NO. 3:24-CV-01935

(MEHALCHICK, J.)

## MEMORANDUM

Pending before the Court are a series of motions and pleadings including a motion to dismiss the original complaint (Doc. 32), a motion to amend the complaint (Doc. 50), a proposed amended complaint (Doc. 36), a motion to serve defendants the proposed amended complaint (Doc. 49), a motion to dismiss the proposed amended complaint (Doc. 39), a motion for electronic filing to constitute service (Doc. 55), and a motion to subpoena documents (Doc. 57). The Court will deny the pending motion to dismiss the original complaint as moot, grant the motion to amend the complaint, and screen the amended complaint pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A(a). Only the Eighth Amendment use of excessive force claim against three Defendants and a First Amendment retaliation claim against one defendant will survive screening. The Court will deny Defendants' motion to dismiss the amended complaint and deny Plaintiff's motions for electronic filing to constitute service and to subpoena documents.

## I.    BACKGROUND AND PROCEDURAL HISTORY

On November 12, 2024, the Court received and docketed a complaint filed by Plaintiff Ryan Michael Gongliewski ("Gongliewski"), an inmate currently housed in the State

Correctional Institution Mahanoy ("SCI-Mahanoy") in Frackville, Pennsylvania. (Doc. 1). The complaint named the following eight defendants: (1) Sgt. Wildenstein ("Wildenstein"), Wyoming County Correctional Facility; (2) Corrections Officer Callahan ("Callahan"), Wyoming County Correctional Facility; (3) Corrections Officer Camaja ("Camaja"); (4) Corrections Officer Flynn, Wyoming County Correctional Facility; (5) W. Repsher ("Repsher"), Warden Wyoming County Correctional Facility; (6) H. Schmidt, Deputy Warden Wyoming County Correctional Facility; (7) Tom Henry ("Henry"), Wyoming County Commissioner; and (8) Jessica Hostaling, Head Nurse LPN Wyoming County Correctional Facility. (Doc. 1). Accompanying the complaint was Gongliewski's motion to proceed *in forma pauperis* and certified prisoner trust fund account statement. (Doc. 2; Doc. 3).

On December 9, 2025, the Court screened the complaint and dismissed all claims and defendants except the First Amendment claims against Defendants Camaja, Wildenstein, and Flynn and the Eighth Amendment claims against Defendants Camaja, Callahan, and Flynn. (Doc. 9). The Court granted Gongliewski the opportunity to amend his complaint by January 10, 2025. (Doc. 9.) The Court did not receive any amended complaint by the deadline and forwarded waiver of service forms to Defendants Camaja, Wildenstein, Callahan, and Flynn on January 21, 2025. (Doc. 16; Doc. 17). On February 7, 2025, these four Defendants waived service. (Doc. 21).

On March 5, 2025, Gongliewski filed a motion to amend his complaint. (Doc. 26). However, this motion was deemed withdrawn as there was no brief in support and no proposed amended pleading accompanied the motion as required by local rules. (Doc. 31).

On March 24, 2025, Defendants Camaja, Wildenstein, Callahan, and Flynn filed a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 32). On April 4,

2025, Defendants requested additional time to file their brief in support of the motion to dismiss, which was granted by the Court. (Doc. 33; Doc. 34.) On April 7, 2025, before Defendants filed their brief in support of their motion to dismiss, Gongliewski filed a brief in opposition of the motion to dismiss. (Doc. 35). Defendants then filed their brief in support of their motion to dismiss on April 14, 2025. (Doc. 38). That same day, Gongliewski filed a proposed amended complaint and several attachments. (Doc. 36). Defendants then filed a reply brief regarding their motion to dismiss the complaint. (Doc. 40).

Defendants Camaja, Wildenstein, Callahan, and Flynn filed a motion to dismiss the proposed amended complaint on April 25, 2025. (Doc. 39). On May 9, 2025, the Court received and docketed both the brief in support and the brief in opposition of the motion to dismiss. (Doc. 41; Doc. 42). Gongliewski filed a second brief in opposition to the motion to dismiss on May 23, 2025. (Doc. 45). That same day, Defendants filed their reply brief regarding their motion to dismiss the proposed amended complaint. (Doc. 46).

On May 29, 2025, Gongliewski filed a motion for service of the proposed amended complaint on the remaining four Defendants named in the proposed amended complaint. (Doc. 49).

On June 2, 2025, Gongliewski filed a motion to amend the complaint requesting that the Court accept the proposed amended complaint filed on April 14, 2025 as an amended complaint. (Doc. 50). On June 23, 2025, Gongliewski filed his brief in support of this motion. (Doc. 56.) Defendants Camaja, Wildenstein, Callahan, and Flynn have not filed any opposition to this motion.

On June 16, 2025, Gongliewski filed a motion for the Court to consider electronic filing as serving the required notice on Defendants. (Doc. 55).

On July 3, 2025, Gongliewski filed a motion for subpoena duces tecum seeking the production of documents and footage from the Wyoming County Correctional Facility along with a brief in support. (Doc. 57; Doc. 58).

The Court will now summarize the proposed amended complaint and address all the pending motions in this action.

## II.    THE PROPOSED AMENDED COMPLAINT

Gongliewski names the same eight Defendants in the proposed amended complaint as he named in the original complaint. (Doc. 26, at 2-3). Gongliewski alleges that all events took place at the Wyoming County Correctional Facility from May 16, 2024 through August 21, 2024. (Doc. 36, at 6). Several of Gongliewski's allegations are not simply a summary of events, but a series of legal conclusions associated with minimal facts. Therefore, the Court presents the following summary of the allegations made in Gongliewski's proposed amended complaint in chronological order.

On May 20, 2024, Wildenstein allegedly took all Gongliewski's hygiene and clothing to cause unhygienic, cruel conditions. (Doc. 36, at 6).

On June 2, 2024, Wildenstein allegedly watched Gongliewski masturbate stating, "nice cock," which Gongliewski states violates the Prisoner Rape Elimination Act ("PREA"). Gongliewski also states that Wildenstein violated his Sixth Amendment right that same day by restricting him access to the law library. (Doc. 36, at 6).

On June 11, 2024, Wildenstein wrote Gongliewski up for a misconduct for protected speech, which Gongliewski states violated his First Amendment right to free speech and demonstrated retaliation. (Doc. 36, at 6).

On June 17, 2024, Gongliewski was told in a grievance that it is not a violation of the First Amendment "to have the cell door window closed to see clock to see times to do prayer," which he alleges is a violation of 37 Pa.C.S. § 95.237 and the First Amendment. He further states that by his First Amendment rights being violated, the action amounted to cruel and unusual punishment in violation of the Eighth Amendment. (Doc. 36, at 6-7).

On June 19, 2024, Gongliewski allegedly received grievance retaliation by Wildenstein. (Doc. 36, at 6).

On June 23, 2024, Camaja allegedly violated the PREA, 28 C.F.R. § 115, 34 U.S.C. § 30301, and DC-ADM-008 by allowing Gongliewski to walk around naked while on suicide watch. Gongliewski alleges this amounted to sexual assault "in the form of sexual harassment." His grievance was denied, "which alone is a violation of plaintiff's 1st amendment US. Const through censorship of free speech as well as Article I § 7 Pa Const. freedom on speech, and violating 37 PaCS § 95.223." (Doc. 36, at 7; Doc. 36-10).

On July 26, 2024, Gongliewski allegedly completed a grievance that showed violations of the First Amendment, Fourth Amendment, 37 Pa.C.S. § 95.223(4), and the Pennsylvania Constitution. (Doc. 36, at 7; Doc. 36-11.)

On July 27, 2024, Gongliewski alleged completed a grievance that showed the women at Wyoming Cunty Correctional Facility suffered violations of the Fourth Amendment, the PREA, 34 U.S.C. § 30301, 28 C.F.R. § 115(11). "For context only as plaintiff suffered no injury in incident just brining to honorable courts attention. As plaintiff is pro se and unable to litigate matter." (Doc. 36, at 7).

On July 27, 2024, Camaja allegedly filed a false misconduct "as no guard was on block when incident occurred." Gongliewski sates that Camaja was located in the bubble walk-way

with his back to the window and came in after the alleged incident, yet in his report he stated that he witnessed the incident. Gongliewski further states that Wildenstein and Flynn came in shortly after and made threats to spray his penis with O.C. spray, which he alleges is a violation of the PREA and DC-AMD-001 and was done to taunt him because he had been sprayed by a non-party on June 23, 2024. He alleges no misconduct hearing took place, which he states is a violation of the Fourteenth Amendment and 37 Pa.C.S. § 240. He further states that the "[i]ncident should also be viewed as a malicious sadistic threat in a sexually harassing nature to be deemed a violation of plaintiff's 8th amendment US. Const. to be free of cruel and unusual punishment." (Doc. 36, at 8.)

On August 6, 2024, Gongliewski was allegedly allowed out of his cell to made a phone call to the victims resource center and he reported the alleged sexual abuse and harassment against him and the female inmates. The man on the phone told him he was unable to report anything and could only send resource materials, which never arrived. (Doc. 36, at 8.)

On August 7, 2024, Gongliewski allegedly requested to move to a cell with cold water in the sink, as the housing unit he was in did not have cold water and he had to rely on other inmates to get cold drinking water because officers refused. He states that he should have been segregated due to watch requirements in 37 PaCS § 95.2226(2). Gongliewski further alleges that this "shows cruel unusual conditions under 8th amendment US. Const and Article I § 13 Pa Const." (Doc. 36, at 8.)

On August 8, 2024, Gongliewski allegedly requested a copy of his account statement, and the answer by Warden Repsher showed the jail violating his Fourteenth Amendment right to due process by restricting access to the court and 37 PaCS § 95.236 because the "account statement required to declare *in forma pauperis*." (Doc. 36, at 9.)

On August 10, 2024, Gongliewski allegedly filed a request "showing false suicide watch violating 37 PaCS § 95.243(7) along with housing of mentally ill 37 PaCS § 95.226(2) written by guard violating 1st amendment US. Const. to free speech as well as Article I § 7 Pa Const. free speech." Gongliewski alleges that this shows a "sadistic malicious way to create cruel and unusual punishment" violating the Eighth Amendment of the U.S. Constitution and Article I § 13 of the Pennsylvania Constitution. (Doc. 36, at 9.)

On August 11, 2024, Gongliewski allegedly filed a grievance to show violations of 37 PaCS §§ 95.238(1) and 95.231(1) and the inmate handbook "done malicious and sadistically to cause psychological and emotional distress at the hands of state officials while on a false suicide watch to violate plaintiffs 8th amendment right US. Const. to be free of cruel and unusual punishment as well as Article I § 13 Pa Const." (Doc. 36, at 9.)

On August 12, 2024, at 4:00 p.m., Camaja allegedly "refused ball at yard as a way to be malicious and sadistic. Plaintiff experienced an excited utterance from all the psychological torment and emotional distress caused by the officer and called him a 'spic'." Yard was then allegedly cut short. Wildenstein and Callahan allegedly entered the yard, and Wildenstein allegedly told Gongliewski to cuff up. Gongliewski was cuffed, and Wildenstein instructed Camaja to perform the pat search. Gongliewski allegedly "verbally attested" to the search alleging that Camaja and him should be separated after the verbal sexual assault set forth in Exhibit 14[1]. Camaja was allegedly instructed to perform the pat search anyway, and he instructed Gongliewski to turn his head towards the wall. Gongliewski denied this request

---

[1] Exhibit 14 is a grievance in which Gongliewski alleges that Camaja harassed him based on his body mass and his genitalia. He also alleges that that Camaja made inappropriate comments about his married sister. (Doc. 36-10).

and "had excited utterance to have this 'spic get his hands off me'." The search was allegedly completed without incident, and Gongliewski was shackled behind his back and began the process of being transported. While in the isolation hallway , Gongliewski allegedly informed Wildenstein of the August 6, 2024 phone call he made above the PREA violations by Wildenstein and other officers. Wildenstein's face allegedly "blankened and anger overtook him." Gongliewski alleges that upon entering the block and passing a stairwell, Wildenstein attempted to "check" or shove him into the stairwell, "to no avail." Gongliewski states that he entered cell B147 without incident and stopped inside the gate to have the shackles removed. Wildenstein then allegedly threw Gongliewski into a corner of the metal bunk. Callahan and Camaja then allegedly grabbed each of Gongliewski's legs and Wildenstein grabbed Gongliewski's upper body "an forcibly threw plaintiff to the ground." Callahan and Camaja allegedly held Gongliewski's legs as Wildenstein held his chest and drew his hand back in a fist, stating "if you ever talk to one of my officers like that again I will beat your f*cking head into the concrete." Flynn then radioed "code Red at this time to which Sgt. Wildenstein immediately had her clear." Gongliewski states that Callahan, Camaja, and Flynn made threatening faces and menacing comments and he responded with "do it pussy beat my head into the concrete only time you want to get tough is when I'm cuffed." Gongliewski alleges he was then rolled on his back, his pants down around his buttocks, and uncuffed. Defendants then left the cell. (Doc. 36, at 9-10).

Gongliewski alleges that this incident resulted in large lacerations/abrasions on his chest and right elbow. He states that he "yelled for medical to no avail." (Doc. 36, at 11.) He seeks to charge Wildenstein, Callahan, and Camaja with violations under 18 U.S.C. §§ 242 and 351(e) and 37 Pa.C.S. § 95.241(2)(i). (Doc. 36, at 11.)

Gongliewski alleges that at 4:41 p.m., Camaja entered the block and threatened Plaintiff "to catch him in the streets and see what happens." Gongliewski alleges that at 4:59 p.m. his breathing "became increasingly exacerbated" and he fell to the floor. Non-party Dennis Smith yelled "code blue" and four officers and Hostaling responded. Hostaling allegedly examined Gongliewski with a stethoscope, a pulse monitor, and a blood pressure cuff. Hostaling examined Gongliewski's chest wound, but she denied his request that pictures of the wound be taken. Gongliewski states that Hostaling then went to office to get saline solution and gauze to clean blood from his chest and elbow. Gongliewski states that Flynn documented the incident in a misconduct report stating that Gongliewski was faking an illness. (Doc. 36, at 11; Doc. 36-3).

On August 13, 2024, Gongliewski alleges that at 8:30 a.m. he left cell B147 for yard and lifted his shirt to show his wound to the camera in the center of the day room. He then proceeded to outside yard and lifted his shirt to show the wound to Repsher, who "made a comment along the lines of tell someone who cares and made a crying gesture to mock plaintiff." Gongliewski also states that 9:00 a.m. he showed non-party Nurse Kelsey his wound and at 9:23 a.m. he showed non-party Captain Turner his bleeding toe caused by "inadequate footwear." He alleges that at 1:46 p.m. he showed his chest wound to non-party Captain Rodgers. Gongliewski states that at 3:20 p.m., he showed Henry the wound to his chest, informed him about the PREA violation occurring, and informed him about the cells having only hot water. Gongliewski alleges that Henry responded with "that sounds expensive write me," and Gongliewski told him that guards had refused him paper and envelopes, and that his suicide pen had died and guards claimed they had no more pens to give him. Henry then allegedly pointed at a stack of grievances on the bottom bunk written

by guards and said, "looks like you have plenty [of] paper." Gongliewski alleges that Camaja then mocked him with a crying gesture and walked away. (Doc. 36, at 11-12.)

Gongliewski alleges that the was "illegally transferred" on August 21, 2024 SCI-Smithfield for the last 85 days of his county sentence in an attempt to cover up the incident in violation of the Sixth, Eighth, and Fourteenth Amendments. Gongliewski states that the transfer occurred at 6:00 am and he was shackled behind his back with a torn shoulder muscle from the August 9, 2024 incident with flip flops that broke during transport. So, he arrived at SCI-Smithfield barefoot with no underwear. (Doc. 36, at 13.)

The Court will grant Gongliewski's motion to amend his complaint and deem the proposed amended complaint (Doc. 36), summarized above, as the operative complaint in this matter. Since this is a new pleading before the Court, it will initially screen the complaint pursuant to 28 U.S.C. § 1915A and *See* 28 U.S.C. § 1915(e)(2) prior to addressing the pending motion to dismiss.

## III.   STANDARD

Under 28 U.S.C. § 1915A, the Court is obligated, prior to service of process, to screen a civil complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007) (not precedential). The Court must dismiss the complaint if it fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010). The Court has a similar obligation with respect to actions brought *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2). In this case, because Huff is a prisoner suing governmental employees and brings his suit *in forma pauperis*, both provisions apply. In performing this mandatory screening function, a district court applies the

same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mitchell*, 696 F. Supp. 2d at 471; *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588 (W.D. Pa. 2008).

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor

need the court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

Additionally, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a well-pleaded complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. There is no requirement that the pleading be specific or probable. *Schuchardt*, 839 F.3d at 347 (citing *Phillips v. County of Allegheny*, 515 F.3d at 224, 233-234 (3d Cir. 2008). Rule 8(a) requires a "showing that 'the pleader is entitled to relief, in order to give the defendant fair

notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting Fed. R. Civ. P. 8(a)(2)); *see also Phillips*, 515 F.3d at 233 (citing *Iqbal*, 550 U.S. at 545).

With the aforementioned standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Further, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

## IV. Screening Discussion

### A. Failure to State a Claim

Several of the allegations inn the amended complaint fall into one or more of three categories: (1) legal conclusions; (2) Gongliewski filing a grievance; or (3) failure to allege any actions of an individual.

First, the Court finds that Gongliewski's legal conclusions without sufficient alleged facts in support of these conclusions do not state a claim upon which relief may be granted. As set forth above, a court must determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the alleged legal claim. *Burtch*, 662 F.3d at 221. Therefore, when Gongliewski does not provide alleged facts, the Court must dismiss the

claims. This is the case in the allegations from June 2, 2024, June 11, 2024, June 19, 2024, and June 23, 2024.

Second, in several instances, Gongliewski states that he filed a grievance or a request that establishes or demonstrates a violation of federal statute or a constitutional right. Stating that he filed a grievance does not allege the factual contents of the grievance nor does it sufficiently allege facts necessary to state a claim upon which relief may be granted and must be dismissed. This is the case in the allegations from July 26, 2024, July 27, 2024[2], August 10, 2024, and August 11, 2024.

Third, Gongliewski will make allegations concerning an event, and not name a single Defendant as an actor or party to that event. (Doc. 36.) To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). It is also well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *See Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). Thus, events alleged without the personal involvement of a Defendant fail to state a claim upon which relief may be granted and must be dismissed. This is the case with the allegations from June 17, 2024, August 6, 2024, August 7, 2024, August 10, 2024, August 11, 2024, and August 21, 2024 transfer to SCI-Smithfield.

---

[2] Specifically, the claims surrounding the violations of the rights of the female prisoners (Doc. 36, at 7) will be dismissed.

Additionally, the Court highlights that Schmidt is not named throughout the factual allegations. (Doc. 36.) Therefore, all claims against him will be dismissed without prejudice for failing to allege any personal involvement by Schmidt.

Furthermore, Gongliewski makes multiple allegations regarding the violation of Department of Corrections ("DOC") policy. (Doc. 36). However, as the Court stated in its memorandum screening the original complaint, DOC policy does not have the force of law and does not rise to the level of a regulation. *Atwell v. Lavan*, 557 F.Supp.2d 532, 556, n. 24 (M.D. Pa. Mar. 26, 2008) *citing Mercy Catholic Medical Center v. Thompson*, 380 F.3d 142, 154 (3d Cir. 2004). Therefore, this Court lacks jurisdiction to consider any such claims. These claims were dismissed with prejudice back in December of 2024. (Doc. 9). To the extend that the amended complaint raises new, unaddressed claims concerning the violation of DOC policy, such claims are dismissed with prejudice.

Additionally, Gongliewski makes multiple allegations that Defendants' actions violated the PREA, which he sometimes refers to as 34 U.S.C. § 30301 and 28 C.F.R. § 115. The PREA does not provide a private right of action, and Gongliewski is, therefore, prohibited from asserting a claim pursuant to PREA. *Harris v. Ferguson*, 3:16-cv-1965, 2017 WL 3611752, at *5 (M.D. Pa. Aug. 22, 2017) *citing Washington v. Folino*, 2013 WL 998013, at *4 (W.D. Pa. Feb. 28, 2013) (holding that violations of the Prison Rape Elimination Act do not create a private cause of action) *and Nestor v. Dir. of NE. Region Bureau of Prisons*, 2012 WL 6691791, at *3 (D.N.J. Dec. 20, 2012) (granting summary judgment to defendants on the plaintiff's attempt to recover under PREA). Consequently, any claim Gongliewski may be attempting to bring under the PREA in the amended complaint will be dismissed with prejudice.

Similarly, Gongliewski seeks to bring criminal charges against Defendants by citing 18 U.S.C. §§ 242, 351. However, private citizens lack standing to initiate criminal proceedings. *United States v. Wegeler*, 941 F.3d 665, 668 (3d Cir. 2019) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Therefore, any attempts to raise criminal actions against Defendants in this civil complaint will be dismissed with prejudice.

Gongliewski also makes several allegations that Defendants violated Title 37, Chapter 95 of Pennsylvania Code. (Doc. 36). Such regulations do not create a private cause of action, nor are a violation of these regulations the proper subject of a civil rights action brought under Section 1983. *See Roman v. County of Chester*, No. 23-1662-KSM, 2024 WL 4844792, *13 n. 5 (E.D. Pa. Nov. 20, 2024) *citing Yunik v. McVey*, Civil Action No. 08-1706, 2010 WL 4777623, at *5 (W.D. Pa. Nov. 16, 2010) ("To the extent that Plaintiff seeks to sue Mr. Mangino for violations of state laws and rules, we find that such fails to state a claim under Section 1983 because in order to state a claim under Section 1983, the Plaintiff must allege a violation of his federal rights and not merely a violation of state law.").

The only claims that remain are Gongliewski's claims from May 20, 2024, July 27, 2024, August 8, 2024, August 12, 2024, and August 13, 2025. The Court will now address each of these dates individually.

B.  MAY 20, 2024

In the amended complaint, Gongliewski alleges that on May 20, 2024, Wildenstein took his hygiene and clothing to cause unhygienic and cruel conditions. (Doc. 36, at 6). The Court liberally construes this as an Eighth Amendment claim.

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. Amend. VIII. Prison conditions constitute cruel and unusual punishment if they result in a serious

deprivation of the prisoner's basic human needs. *See Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). Only conditions that are so reprehensible as to be deemed inhumane under contemporary standards or deprive an inmate of minimal civilized measures of the necessities of life violate the Eighth Amendment. *See Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "A claim of inhumane prison conditions may rise to the level of an Eighth Amendment violation where the prison official 'deprived the prisoner of the minimal civilized measure of life's necessities' and 'acted with deliberate indifference in doing so, thereby exposing the inmate to a substantial risk of serious damage to [his] future health.'" *Palakovic* , 854 F.3d at 225 (quoting *Parkell v. Danberg*, 833 F.3d 313, 335 (3d Cir. 2016)). Such a claim contains two requirements: an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prisoner asserting a claim that the conditions of confinement violate the Eighth Amendment must allege: (1) that objectively, they were "incarcerated under conditions posing a substantial risk of serious harm;" and (2) that the defendant prison official personally knew of the substantial risk to the inmate's health or safety and failed to "respond [ ] reasonably to the risk." *Farmer*, 511 U.S. at 834, 844–45. Here, the Court acknowledges that the deprivation of clothing and hygiene materials may be viewed as a deprivation of life's necessities, but Gongliewski has failed to allege that the depravation exposed him to a substantial risk of serious damage to his future health. In fact, the amended complaint makes multiple references to Gongliewski being placed on suicide watch (Doc. 36), in which the deprivation of some items of clothing and hygienic tools would be considered the appropriate means to protect his health. Therefore, this Eighth Amendment claim will be dismissed without prejudice.

C.  JULY 27, 2024

In the amended complaint, Gongliewski alleges that Camaja filed a false misconduct report against him and no misconduct hearing took place in violation of the Fourteenth Amendment. (Doc. 36, at 8). The Fourteenth Amendment provides, in pertinent part, that no State shall "deprive any person of life, liberty, or property, without due process of law[.]" *See* U.S. Const. amend. XIV. A Fourteenth Amendment due process claim requires that a liberty interest be at stake:

> Procedural due process rights are [only] triggered by deprivation of a legally cognizable liberty interest. For a prisoner, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.*" Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.E.2d 418 (1995). In determining whether a protected liberty interest exists, the court must consider: (1) the duration of the disciplinary confinement; and (2) whether the conditions of confinement were significantly more restrictive than those imposed upon other inmates in solitary confinement. *See id.* at 468, 115 S.Ct. 2293; *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000).

*Huertas v. Sec'y of Pa. Dep't of Corr.*, 533 F. App'x 64, 66 (3d Cir. 2013). Here, Gongliewski has not alleged the deprivation of any legally cognizable liberty interest. He simply alleges that a false misconduct report was filed and there was no hearing. Without some loss of a liberty interest resulting from the filing of the misconduct, the Fourteenth Amendment claim must be dismissed. This dismissal will be without prejudice.

Gongliewski also alleged that Wildenstein and Flynn made threats to spray his penis with O.C. spray, which he alleges violates the Eighth Amendment. (Doc. 36, at 8). It is well-settled that the use of words, no matter how violent, is not actionable under 42 U.S.C. § 1983. *See Lewis v. Wetzel*, 153 F.Supp.3d 678, 699 (M.D. Pa Dec. 21, 2015); *see also Harris*, 2017 WL 3611752, at *4-5 (granting summary judgment to defendants on § 1983 claims regarding verbal sexual harassment because the record did not show that plaintiff suffered injury or

damage); *Maclean v. Secor*, 876 F. Supp. 695, 698-99 (E.D. Pa. 1995) ("It is well established that verbal harassment or threats will not . . . without some reinforcing act accompanying them, state a constitutional claim."). Therefore, any claims concerning verbal threats will be dismissed with prejudice.

### D. AUGUST 8, 2024

In the amended complaint, Gongliewski alleges that his request for an account statement was denied by Repsher which restricted his access to the courts because the account statement was required to proceed *in forma pauperis*. (Doc. 36, at 9.) The Court construes this as a First Amendment claim.

Asserting an actionable claim for denial of access to the courts requires a prisoner to allege that (1) they "lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim" and (2) they have no available remedy for the lost claim other than the present denial of access action. *Rivera v. Monko*, 37 F.4th 909, 915 (3rd Cir. 2022) (citing *Monroe v. Beard*, 536 F.3d 198, 205 (3rd Cir. 2008)). Most significant is the nonfrivolous nature of the claim allegedly lost. The lost claim must be "more than hope" in order to be deemed nonfrivolous. *Christopher v. Harbury*, 536 U.S. 403, 416 (2002).

Gongliewski has not alleged that he lost the opportunity to pursue his claim based on Repsher's denial. Therefore, the First Amendment claim will be dismissed without prejudice.

### E. AUGUST 12, 2024

The alleged events of August 12, 2024 appear to be the crux of Gongliewski's amended complaint. In it, Gongliewski alleges excessive use of force, retaliation, deliberate indifference to a serious medical need, and a violation due process. (Doc. 36, at 9-11).

### 1. Excessive Use of Force

The Eighth Amendment's protection against cruel and unusual punishment is the "primary source of substantive protection in cases . . . where the deliberate use of force is challenged as excessive and unjustified." *See Whitley v. Albers*, 475 U.S. 312, 327 (1986). The question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7 (citing *Whitley*, 475 U.S. 312).

Gongliewski alleges that Wildenstein, Callahan, and Camaja used force against him that was not associated with maintaining or restoring discipline, as he alleges the use of force took place once he was returned to his cell and turned around for restraints to be removed. (Doc. 36, at 9-10). Therefore, this Eighth Amendment claim will survive screening.

To the extend that the allegations that Callahan, Camaja, and Flynn made threatening faces and menacing comments or threats, such actions are not actionable under Section 1983 and will be dismissed with prejudice. *See Maclean*, 876 F. Supp. at 698-99.

### 2. Retaliation

Gongliewski brings a retaliation claim in relation to the August 12, 2024 events. (Doc. 36, at 9-11). Such claims are addressed under the First Amendment.

It is well-settled that prison officials may not retaliate against an inmate because he exercises his right of access to the courts. *Fantone v. Latini*, 780 F.3d 184, 191 (3d Cir. 215). A prisoner asserting a retaliation claim must allege the following elements: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse

action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). The filing of a lawsuit or a prison grievance constitutes protected activity under the First Amendment. *Fantone*, 780 F.3d at 191.

Here, Gongliewski alleges in the amended complaint the use of force was preceded by him telling Wildenstein "and other officers" that he had reported him on the abuse hotline for alleged violations under the PREA. (Doc. 36). Therefore, Gongliewski has properly alleged a retaliation claim against Wildenstein.

However, Gongliewski did not properly state a claim of retaliation against any other Defendant who took part in the use of force on August 12, 2024 as he did not identify any other Defendants as the individuals he reported on the August 6, 2024 call. (Doc. 36). This Court has repeatedly refused to find a causal connection when the alleged perpetrator of the retaliatory activity was not the subject of the constitutionally protected activity. *See Calloway v. Bauman*, No. 2:20-cv-2337, 2022 WL 4357468, at *9 (M.D. Pa. Sep. 20, 2022) *citing Victor v. Lawler*, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010), *aff'd*, 565 F. App'x 126 (3d Cir. 2014); *also citing Evans v. Rozum*, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009) ("There is no apparent reason why [the moving defendants] would want to retaliate against Plaintiff for filing a lawsuit against others."); *also citing Royster v. Beard*, 308 F. App'x 576, 579 (3d Cir. 2009) (affirming summary judgment in favor of defendant on plaintiff's claim that he was retaliated against by a defendant who was not the target of his protected activity). Therefore, the retaliation claims against Camaja, Callahan, Flynn, and Hostaling will be dismissed without prejudice.

The Court acknowledges that Gongliewski named Camaja in grievances he filed prior to August 12, 2024 (Doc. 36-10; Doc. 36-13; Doc. 36;14), but he does not allege that these

grievances were was "a substantial or motivating factor" for the adverse action against him. Instead, the complaint clearly alleges that the "a substantial or motivating factor" was information Wildenstein that he had named him in a call to the abuse hotline. (Doc. 36, at 9-10). Therefore, Camaja being named in grievances does not result in any First Amendment liability.

### 3. Deliberate Indifferent to Serious Medical Need

The amended complaint can be liberally construed as raising a denial of medical treatment claim under the Eighth Amendment against Hostaling. (Doc. 36, at 11.)

Prison officials violate the Eighth Amendment when they act with deliberate indifference to a prisoner's serious medical needs. *See Estelle*, 429 U.S. at 104-05. To sustain a constitutional claim under the Eighth Amendment for inadequate medical treatment, a plaintiff must make (1) an objective showing that his medical needs were serious, and (2) a subjective showing that the defendants were deliberately indifferent to those medical needs. *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 346–47 (3d Cir. 1987) (citation omitted). A prison official is deliberately indifferent when he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

However, "[p]rison medical authorities are given considerable latitude in the diagnosis and treatment of medical problems of inmates and courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment.'" *Byrd v. Shannon*, No. 1:09-CV-1551, 2010 WL

22

5889519, at *4 (M.D. Pa. Nov. 24, 2010) (quoting *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir. 1979)). Mere disagreement over proper treatment does not state a claim upon which relief can be granted. *White v. Napoleon,* 897 F.2d 103, 110 (3d Cir. 1990); *Monmouth Cty. Corr. Inst'l Inmates,* 834 F.2d at 346 ("Courts, determining what constitutes deliberate indifference, have consistently held that mere allegations of malpractice do not raise issues of constitutional import. . . Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation.").

Here, Gongliewski alleges that Hostaling provided medical treatment:

> Nurse Hostaling used a stethoscope to examine plaintiff breathing. A pulse monitor applied to plaintiffs index finger which was elevated. A blood pressure cuff applied to plaintiffs arm to determine higher than average blood pressure. Chest wound examined with a gentle touch. Plaintiff requested pictures to be taken to satisfy DC-ADM-457 to which she said she has no camera and the guards won't allow it. She then left to go to her office and get saline solution and gauze to clean blood from chest and elbow.

(Doc. 36, at 11). Nothing in the amended complaint amounts to an allegation that Hostaling denied treatment. To the extent that Gongliewski disagreed with the treatment provided, such disagreement does not constitute an Eighth Amendment violation. Therefore, the claim of deliberate indifferent to Gongliewski's serious medical need will be dismissed without prejudice.

The Court acknowledges that Gongliewski made a plea for medical assistance in his cell directly following the use of force, but it was after he alleged that any named Defendants left the cell, and he does not allege any named Defendants heard his plea and failed to assist in getting medical care. Therefore, these facts, as alleged, do not create liability under the Eighth Amendment.

### 4. Due Process

In the amended complaint, Gongliewski mentions that Flynn document his fall in the cell as a misconduct by stating that Gongliewski was feigning illness. (Doc. 36, at 11; Doc. 36-3). To the extent that Gongliewski is attempting bring a Fourteenth Amendment due process claim for the misconduct report that Flynn filed, without some allegation that the misconduct report resulted in the deprivation of a liberty interest, *see Huertas* 533 F. App'x at 66, his claim will be denied without prejudice.

### F.  AUGUST 13, 2024

The only parties to this action that Gongliewski alleges he interacted with on August 13, 2024 were Henry and Camaja. (Doc. 36, at 11-12). However, none of these interactions resulted in a constitutional violation.

He alleges that both Henry and Camaja mocked him with a crying gesture. (Doc. 36, at 11-12). However, as discussed above, harassment or verbal threats to not constitute an Eighth Amendment claim. *Maclean*, 876 F. Supp. at 698-99. Therefore, nonverbal mocking does not amount to a claim under Section 1983

Gongliewski also alleges that he showed Henry the wound to his chest and informed him about the alleged PREA violations, and the lack of cold water in the cells. Gongliewski alleges that Henry told Gongliewski to write him about the water and when Gongliewski told Henry that guards had allegedly not provided him writing materials, Henry pointed to a stack of grievances on the bottom bunk and said, "Looks like you have plenty [of] paper." (Doc. 36, at 11-12). While Gongliewski does not allege Henry had any personal involvement in the alleged problems he reported to Henry on August 13, 2024, it appears that Gongliewski is

attempting to establish Henry's liability based on his role as the County Commissioner and that he had notice of the alleged constitutional violations.

If a plaintiff seeks to hold a supervisory official liable for unconstitutional acts by their subordinates, the plaintiff's allegations must satisfy one of two theories of supervisory liability: (1) "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm[;]" and (2), "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *See A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted); *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (explaining requirements for supervisory liability in section 1983 claim and describing "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates"), rev'd on other grounds sub nom., *Taylor v. Barkes*, 575 U.S. 822 (2015).

To allege a plausible claim for supervisory liability under the first theory, a plaintiff must "identify the specific supervisory practice or procedure that the supervisor failed to employ." *See Chavarriaga v. New Jersy Dept. of Corrections*, 806 F.3d 210, 227 (3d Cir. 2015) (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)). The plaintiff must also show that:

> [(1)] the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, [(2)] the supervisor was aware that this unreasonable risk existed, [(3)] the supervisor was indifferent to the risk[,] and [(4)] the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure. Put another way, the inmate must identify the supervisor's specific acts or

omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury.

*Chavarriaga*, 806 F.3d at 227 (quoting *Brown*, 269 F.3d at 216).

For the second theory of supervisory liability, generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (unpublished) ("Saisi asserted that some defendants were in charge of agencies that allowed this to happen, and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of [their] position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005))); *Zigler v. Warren*, No. 21-cv-19474, 2022 WL 903383, at *2 (D.N.J. Mar. 28, 2022) ("In simpler terms, a supervisor is not liable for the unconstitutional conduct of his employees solely because he is a supervisor."). Additionally, "[a]lthough a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *See Chavarriaga*, 806 F.3d at 222 (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1194 (3d Cir. 1995).

Gongliewski's alleged facts concerning Henry on August 13, 2024 are not sufficient to meet the requirements of a supervisor liability claim under the first theory as there are no allegations concerning the failed supervision on the part of Henry in his role as County Commissioner. Likewise, Gongliewski's allegations do not meet the requirements of the second theory because he does not allege that Henry acquiesced to the alleged violations. Instead, Gongliewski alleges that Henry told him to file a grievance, Gongliewski responded

that he did not have the means to file the grievance, and Henry pointed to paper in Gongliewski's cell indicating that he did have the necessary tools to file such a grievance. Gongliewski makes no allegations that the violations continued after the notice he provide to Henry.

Therefore, any Eighth Amendment claim against Henry and Camaja for their actions on August 13, 2024 will be dismissed without prejudice.

G. Gongliewski's Motion for Service

Following screening of the amended complaint, the only remaining claims are the Eighth Amendment use of excessive force claim against Wildenstein, Callahan, and Camaja and the First Amendment retaliation claim against Wildenstein. These three Defendants have already waived service. (Doc. 21). Since the claims against the named Defendants who did not receive waiver of service forms did not survive screening, Gongliewski's motion for service by the U.S. Marshal (Doc. 49) will be denied as moot.

H. Defendants' Motion to Dismiss

As stated above, following screening of the amended complaint, the only remaining claims are the Eighth Amendment use of excessive force claim against Wildenstein, Callahan, and Camaja and the First Amendment retaliation claim against Wildenstein all stemming from the alleged actions of August 12, 2024.

In their motion to dismiss, Wildenstein, Callahan, and Camaja raise the defense of exhaustion and qualified immunity.

1. Administrative Exhaustion

The Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e et seq., requires prisoners to exhaust available administrative remedies before suing prison officials for alleged constitutional violations. See 42 U.S.C. § 1997e(a); Ross v. Blake, 578 U.S. 632,

639, 642 (2016) (explaining that only "available" remedies must be exhausted). Proper exhaustion is mandatory, even if the inmate is seeking relief—like monetary damages—that cannot be granted by the administrative system. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006). However, there are situations in which a grievance procedure may be rendered "unavailable" to an inmate, such as when a prison official thwarts an inmate's ability to use it, *Ross*, 578 U.S. at 643–44, when intimidation by means of "serious threats of retaliation and bodily harm" prevent an inmate from filing, *Rinaldi v. United States*, 904 F.3d 257, 266-67 (3rd Cir. 2018), or when a prison has "rendered its administrative remedies unavailable . . . when it failed to timely (by its own procedural rules) respond to [an inmate's] grievance and then repeatedly ignored his follow-up requests for a decision on his claim," *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016).

Gongliewski's amended complaint includes multiple assertions that he filed grievances and some of these grievances and their corresponding responses are attached to the complaint. However, Gongliewski's amended complaint does not allege that he appealed any of these grievance determinations. Regardless, exhaustion is not a pleading requirement, but an affirmative defense. *Jones v. Beck*, 549 U.S. 199, 216 (2007). While it appears that Defendants are raising the lack of exhaustion as an affirmative defense, they put the burden on Gongliewski to plead exhaustion: "[h]is amended Complaint is devoid of any allegation that he attempted to internally report any Defendant for the conduct at issue or otherwise follow the correctional facility's grievance procedure." (Doc. 42, at 8). Instead, the burden is on Defendants to establish that Gongliewski did not exhaust his administrative remedies. Therefore, Gongliewski's amended complaint survives the exhaustion defense at

this stage in the litigation. Defendants may raise the defense in any subsequent dispersive motions.

### 2. Qualified Immunity

Defendants also raise the affirmative defense of qualified immunity. (Doc. 42, at 8-10). The Court notes that Gongliewski fails to allege whether he is bringing the claims against Defendants in their official or individual capacity. (Doc. 36). However, the Third Circuit requires a nonspecific complaint such as this to be liberally construed as if the claims were brought against Defendants both their in their individual capacities and official capacities. *Gregory v. Chehi,* 843 F.2d 111, 119–20 (3rd Cir. 1988) ("[R]esolving doubts in favor of plaintiff, we will assume he is suing the individuals in their personal capacities as well."). Therefore, the Court will now address the qualified immunity defense.

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Peroza-Benitez v. Smith, 994 F.3d 157,* 165 (3d Cir. 2021) (internal quotation marks omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)) (per curiam). In assessing whether qualified immunity applies, the court engages in a two-part analysis: (1) whether the plaintiff sufficiently alleged a right had been violated; and (2) whether that right was clearly established when it was allegedly violated to the extent "that it would have been clear to a reasonable person that his conduct was unlawful." *Williams v. Secretary, Pennsylvania Department of Corrections*, 848 F.3d 549, 557 (3d Cir. 2017).

As addressed above, Gongliewski has sufficiently alleged that his Eighth and First Amendment rights were violated by Wildenstein, Callahan, and Camaja. Therefore, the Court must assess the second part of the qualified immunity analysis. "A Government

official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 248 (3d Cir. 2016) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)) (internal quotation marks omitted). "The ultimate question is whether the state of the law when the offense occurred" gave the prison officials "fair warning" that their conduct violated Gongliewski's Eighth Amendment right. *L.R.*, 836 F.3d 235 at 247 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). To determine whether such "fair warning" existed, the court must look for "factually analogous" precedential cases. *Clark v. Coupe*, No. 21-2310, 2022 WL 17246324, at *8 (3d Cir. Nov. 28, 2022) *citing Peroza-Benitez*, 994 F.3d at 165.

Here, the right of Gongliewski was to be free of the use of force that rises to the level of cruel and unusual punishment. "The Supreme Court has made clear that officers may not expose inmates to gratuitous force divorced from any legitimate penological purpose." *Jacobs v. Cumberland County*, 8 F.4th 187, 197 (3d Cir, 2021) *citing Hope*, 536 U.S. at 738. This alone would provide officers with at least some notice that the alleged conduct against Gongliewski, which allegedly included the continued use of force after he was subdued, was unlawful. Therefore, Gongliewski's amended complaint survives the qualified immunity defense at this stage in the litigation.

The remaining argument in Defendants' motion to dismiss concerns whether Gongliewski stated a claim pursuant to Fed. R. Civ. P. 12(b)(6), which was addressed at length in the screening process. Therefore, the motion to dismiss will be denied without further analysis.

## V.    LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *See Grayson*, 293 F.3d at 108. The Third Circuit has also acknowledged that a district court has "substantial leeway in deciding whether to grant leave to amend." *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000).

The Court will not grant Gongliewski further leave to amend his complaint prior to the answer of the complaint. He was already granted this opportunity and failed to file an amended pleading within the deadline provide by the Court. Pursuant to Fed. R. Civ. P. 15 and Local Rule 15.1, if Gongliewski wishes to further amend his pleading, he may do so by filing a motion to amend with a brief in support and a proposed amended pleading.

## VI.    MOTION FOR CLERK'S ELECTRONIC FILING TO CONSTITUTE SERVICE

On June 16, 2025, the Court received and docketed Gongliewski's motion for the Clerk's electronic filing to constitute service. (Doc. 55). Essentially, Gongliewski seeks to be relieved of the requirement to make copies of his filings and forward them to Defendants.

Pursuant to Local Rule 5.7, documents served through the Court's electronic filing system results in a Notice of Electronic Filing which constitutes service of the filed document upon each party in the case who is registered as a Filing User. Here, Defendants' counsel is a Filing User and is receiving Notice of Electronic Filing of Gongliewski's submissions to the Court. Therefore, Gongliewski's motion is denied as moot.

## VII.    MOTION FOR SUBPOENA DUCES TECUM

On July 3, 2025, the Court received and docketed Gongliewski's motion for subpoena duces tecum seeking he production of documents, electronic files, and video

footage relating to the claims raised in the amended complaint. (Doc. 57). He also filed a brief in support. (Doc. 58).

The Court has the inherent authority to review subpoena requests by an unrepresented party proceeding *in forma pauperis* before issuing the subpoenas. *Brown v. Monsalud*, No. 1:20-CV-00849, 2023 WL 8115984, at *1 (M.D. Pa. Jan. 12, 2023) (citing *Jackson v. Brinker*, No. IP 91-471-C at 1992 WL 404537, at *4–5 (D. Ind. Dec. 21, 1992)). The decision whether to allow an unrepresented litigant to subpoena a witness's testimony at trial is subject to the court's discretion. *Gay v. Petsock*, 917 F.2d 768, 772–73 (3d Cir. 1990).

A request for a subpoena is properly denied where the requesting party fails to state the relevance of the witness's testimony to the trial. *Brown v. Dep't of Corrs.*, No. 1:15-CV-918, 2021 WL 1969442, at *2–3 (M.D. Pa. May 17, 2021); *Bakhtiari v. Madrigal*, No. 3:18-CV-00038, 2019 WL 13255457, at *2 (M.D. Pa. Sept. 16, 2019).

Additionally, when a plaintiff is proceeding *in forma pauperis*, he is still responsible for paying his own litigation costs, *see Tabron v. Grace*, 6 F.3d 147, 159 (3d Cir. 1993), including the costs of serving a subpoena and having a witness comply with the subpoena, *see Jacobs v. Heck*, 364 F. App'x 744, 748 (3d Cir. 2010), and any compensation to witnesses required by 28 U.S.C. § 1821. Thus, before a subpoena may be issued, a plaintiff proceeding *in forma pauperis* must demonstrate that he can pay the costs associated with the subpoena. *Davis v. Wetzel*, No. 1:18-CV-00804, 2022 WL 22905385, at *2 (M.D. Pa. Feb. 24, 2022); *Badman v. Stark*, 139 F.R.D. 601, 605 (M.D. Pa. 1991).

Here, Gongliewski is proceeding *in forma pauperis* (Doc. 9) and his motion and brief in support do not provide any information concerning how he intends to cover the cost of the

subpoena. Therefore, the Court will deny the motion without prejudice to Gongliewski renewing his motion with the required information. Additionally, Gongliewski is limited to seeking the production of evidence relevant to the claims that have survived screening.

## VIII.    CONCLUSION

The Court will grant Gongliewski's motion to amend the complaint, treat the proposed amended complaint as the operative complaint in this mater, deny Defendants' motion to dismiss the original complaint as moot, dismiss all claims raised in the amended complaint except the Eighth Amendment use of excessive force claim against Wildenstein, Callahan, and Camaja and the First Amendment retaliation claim against Wildenstein from August 12, 2024, deny Defendants' motion to dismiss the amended complaint, deny Gongliewski's motion for service, and deny Gongliewski's motion for subpoena duces tecum.

An appropriate order follows.

Dated: January 14, 2026                                  s/ Karoline Mehalchick
                                                         **KAROLINE MEHALCHICK**
                                                         **United States District Judge**